UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JUN 1 9 2012
```

-------------------------------------------------------------------- X
    :
SH TANKERS LIMITED,              :
            Petitioner,   :
    :       12 Civ. 00375  (AJN)
    -v-            :
              OPINION AND ORDER
    :
KOCH SHIPPING INC.,        :
            Respondent.  :
    :
-------------------------------------------------------------------- X

ALISON J. NATHAN, District Judge:

      Petitioner SH Tankers Limited ("SH Tankers") filed a petition to (1) compel Respondent

Koch Shipping Inc. ("KSI") to prosecute its counterclaims in their pending arbitration, or, in the

alternative, (2) vacate an interim ruling of the arbitration panel staying further proceedings until

SH Tankers complies with a Partial Final Award ordering it to post security for KSI's

counterclaims.  KSI opposes that petition and cross-petitions to confirm the Partial Final Award.

For the following reasons, SH Tankers' petition is DENIED and KSI's cross-petition is

GRANTED.

## III.    BACKGROUND[1]

      On April 4, 2010, Somali pirates hijacked the *M/V Samho Dream* ("Vessel"), an oil

supertanker carrying roughly $170 million worth of crude oil, as it made its voyage from Iraq to

the United States Gulf.  (Pet. ¶¶ 6, 10; Pet. Ex. A, at 2).  The pirates held the Vessel and its crew

hostage for seven months until finally releasing them on November 6, 2010, in return for

approximately $9 million ransom.  (Pet. ¶ 10; Honan Aff. ¶ 9).

      The Vessel is owned by Petitioner SH Tankers.  (Pet. ¶ 6).  In February 2010,

---

[1] The parties do not contest the following facts.

Respondent KSI chartered the Vessel from SH Tankers under a time charter party, which remained in effect throughout the Vessel's detention.  (Pet. ¶ 7; Honan Aff. ¶¶ 2, 8).  After the Vessel was seized, SH Tankers claimed that KSI was responsible under the charter party for negotiating and paying the ransom.  KSI disagreed.  (Pet. ¶ 18).  Ultimately, Garex, SH Tankers' marine war-risk underwriter,[2] paid the ransom.  (Honan Aff. ¶ 9).  SH Tankers initiated arbitration before a panel of three arbitrators ("Panel") from the Society of Maritime Arbitrators,[3] and, in February 2010, submitted claims for $11.8 million, seeking to recover the ransom paid by Garex and other expenses.  (Pet. ¶ 20).  KSI, alleging that the hijacking was SH Tankers' fault, submitted various counterclaims seeking $13.4 million.  (Pet. ¶¶ 19–20).

During the arbitration, on April 1, 2011, KSI — citing concerns about SH Tankers' financial stability — applied to the Panel for an order requiring SH Tankers to post security for KSI's counterclaims.  (Pet. ¶ 21; Textor Decl. Ex. F).  In a "Partial Final Award" issued July 15, 2011 ("Security Award"), the Panel unanimously granted KSI's request.  (Pet. Ex. A [Security Award], at 3).  The Panel found that there was a likelihood that KSI would prevail on the merits, (*id.* at 5), but that, given the "precarious state of [SH Tankers'] finances . . . the only avenue of funds for KSI, should it be successful on the merits, would be the security KSI seeks."  (*Id.* at 4).  It therefore ordered SH Tankers to post — within 45 days — $14.2 million in security for KSI's counterclaims.  (*Id.* at 3).  SH Tankers never did, and KSI filed a motion to dismiss SH Tankers' claims for, *inter alia*, its failure to comply with the Award.  (Pet. ¶ 23; Textor Decl. Ex. KK).

At an organizational hearing on October 12, 2011 — weeks after its deadline to comply

---

[2] "Garex" — or *Groupement d'assurance de Risques Exceptionnels* — served as lead underwriter for the Vessel's war-risk insurance provided by Samsung Fire & Marine Insurance Company Limited.  (Lasserre Decl. ¶ 3).

[3] The charter party contained an arbitration clause providing that "any dispute arising out of or in connection with this Contract shall be referred to an arbitration in New York," and that such "arbitration shall be conducted in accordance with the Society of Maritime Arbitrators of New York Terms current at the time when the arbitration proceedings are commenced."  (Honan Aff. Ex. 1).

with the Award had passed — SH Tankers informed the Panel that it would not post the security. (*See* Honan Supp. Aff. Ex. 1 ("Hr'g Tr."), 1400–01, 1449).  It also informed the Panel that Garex was funding SH Tankers' participation in the arbitration, but that Garex would not post security on SH Tankers' behalf.  (*Id.* at 1343–46, 1386–87).  Also at the hearing, the Panel denied KSI's motion to dismiss, but ruled — without objection from SH Tankers — that it would "defer" hearing SH Tankers' affirmative claims until either SH Tankers or Garex posted security.  (*Id.* at 1393).  KSI, on the other hand, was to go forward with presenting its counterclaims, against which SH Tankers could still defend.  (*Id.*).

KSI, however, opposed to proceeding with its counterclaims unsecured, wrote to the Panel on October 17, 2011, asking the Panel to "stay the arbitration proceedings *sine die*" until SH Tankers — or Garex, the "real beneficiary" of SH Tankers' claims — posted security.  (Pet. Ex. B).  SH Tankers opposed the request.  (Textor Decl. Ex. UU).  On October 19, 2011, in an email to the parties labeled "Panel Ruling," the Panel unanimously granted KSI's request to stay the proceedings until SH Tankers posted security for KSI's counterclaims.  (Pet. Ex. C ("Panel Ruling")).  The Panel noted that "[SH Tankers], or more accurately its underwriter, has chosen not to" comply with the Security Award, and that forcing KSI to proceed without security would cause it "to incur very substantial legal expense without any real possibility of satisfying a favorable award."  (*Id.*).  The Panel therefore ruled that, "out of a sense of fairness and commercial good sense," the proceedings would be stayed until security was posted.  (*Id.*).  The Ruling concluded:  "The Panel remains constituted. . . . Should [SH Tankers] or its underwriter choose to secure KSI's counterclaims as previously directed, the Panel will proceed to hear and decide the claims and counterclaims as promptly as possible."  (*Id.*).

On October 24, 2011, SH Tankers sought reconsideration of the Panel Ruling.  (Textor

Decl. Ex. WW).  The Panel denied the application on October 31, 2011, stating: "The Panel has carefully weighed counsels' exchanges with respect to [SH Tankers'] request for reconsideration and unanimously re-affirms its ruling of October 19, 2011, granting [KSI's] request for a stay of these proceedings *sine die*."  (Textor Decl. Ex. AAA).  In an email sent November 2, 2011, addressing payment of its interim fees, the Panel reaffirmed that it "remains constituted in the event the parties wish to continue these proceedings."  (Textor Decl. Ex. BBB).

## IV.    GOVERNING LAW

SH Tankers is a foreign business entity.  (Pet. ¶ 1).  The arbitration is taking place in the United States.  (*Id.* ¶ 5).  As such, the parties' claims are subject to both Chapter 1 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16 (governing domestic arbitration), and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, as implemented by Chapter 2 of the FAA, 9 U.S.C. §§ 201–08 (governing nondomestic arbitration).  *See Scandinavian Reins. Co. v. St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012).  Therefore, the provisions of Chapter 1 apply here "except to the extent that [they] conflict[] with the Convention or Chapter 2," in which case the latter provisions control.  *Phoenix Aktiengesellschaft v. Ecoplas, Inc.*, 391 F.3d 433, 435 (2d Cir. 2004) (citing *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 973 (2d Cir. 1974)); *see* 9 U.S.C. § 208.

## V.    DISCUSSION

### A.  Petition to Compel Arbitration

SH Tankers petitions this Court for an order under Section 4 of the FAA[4] "compelling

---

[4] SH Tankers submits its petition to compel arbitration under both Chapters 1 and 2 of the FAA.  (Pet. ¶ 34); *see* 9 U.S.C. §§ 4, 206.  Because the provisions of those chapters relevant to this claim do not conflict, the Court analyzes the petition under Chapter 1, Section 4.  *See Hartford Accident & Indem. Co. v. Equitas Reins. Ltd.*, 200 F. Supp. 2d 102, 108–09 (D. Conn. 2002).

KSI to proceed with prosecuting its counterclaims in the arbitration." (Pet. 11). SH Tankers contends that KSI has "refused to arbitrate" within the meaning of Section 4 by obtaining an indefinite stay of the arbitration and declining to proceed once the stay was in place.

Section 4 of the FAA provides, in relevant part, that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Under Section 4, "the role of courts is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004) (quoting *Jacobs v. USA Track & Field*, 374 F.3d 85, 88 (2d Cir. 2004)). "A party has refused to arbitrate if it 'commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so.'" *Id.* (brackets omitted) (quoting *Jacobs*, 374 F.3d at 89). But "[c]learly, unless the respondent has *resisted* arbitration, the petitioner has not been 'aggrieved' by anything," and there is nothing for the court to compel. *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1067 (3d Cir. 1995) (emphasis added); *see also LAIF X SPRL v. Axtel, S.A. de C.V.*, 310 F. Supp. 2d 578, 581 (S.D.N.Y.) ("[Petitioner] is not entitled to an order compelling [respondent] to arbitrate, since [respondent] is already participating in the ongoing arbitration."), *aff'd*, 390 F.3d 194 (2d Cir. 2004); *Koreska v. Perry-Sherwood Corp.*, 253 F. Supp. 830, 832 (S.D.N.Y. 1965) ("[I]t is clear that [this court] cannot compel arbitration . . . since the parties have already submitted to arbitration . . . ."), *aff'd per curiam on op. below*, 360 F.2d 212 (2d Cir. 1966).

Here, KSI has not refused to arbitrate within the meaning of Section 4 — it neither commenced litigation in lieu of arbitration nor refused to comply with a Panel order to arbitrate.

*See Jacobs*, 374 F.3d at 89.  In fact, it was SH Tankers that cast the first litigation stone by filing this action protesting KSI's decision to *abide* by the Panel's Ruling.  *See id.* ("Indeed, it is *petitioner* who, by filing this action, seeks to avoid the [arbitrators'] determination . . . .").  But KSI's refusal to forfeit a favorable ruling — obtained *within* arbitration — is hardly a refusal to *submit* to arbitration.  *See LAIF X SPRL*, 390 F.3d at 200 ("True, [respondent] has sought a stay of the arbitration, but it has made that application in the arbitral forum.  It has thus submitted itself to the arbitral forum . . . ."); *Jacobs*, 374 F.3d at 89.

At bottom, it is the Panel that granted the stay by whom SH Tankers feels "aggrieved." But SH Tankers "cannot use Section 4 as a vehicle to seek review of the [Panel's] decision about how to proceed with the arbitration process."  *Jacobs*, 374 F.3d at 89.  KSI properly sought a stay and the Panel saw fit to grant one.  KSI's adherence to the Panel's ruling to stay the arbitration pending the posting of security is not a refusal to arbitrate, and SH Tankers cannot attempt to thwart the Panel's ruling under the guise of "compelling arbitration."  *See id.*; *accord LAIF X SPRL*, 390 F.3d at 199.  SH Tankers' petition to compel arbitration is therefore denied.

### B.  Petition to Vacate

SH Tankers alternatively petitions this Court for an order under Section 10 of the FAA vacating the Panel's October 19, 2011 ruling ("Panel Ruling" or "Ruling") staying further arbitration proceedings until SH Tankers posts security for KSI's counterclaims.  Specifically, SH Tankers contends that, by canceling evidentiary hearings and conditioning the continuation of proceedings on SH Tankers' posting of security, the Panel is "guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy."  9 U.S.C. § 10(a)(3).

### 1.  *The Panel's Interlocutory Ruling is Not Subject to Judicial Review*

Under the FAA, "a district court does not have the power to review an interlocutory

ruling by an arbitration panel." *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980). "Where, as here, arbitrators make an interim ruling that does not purport to resolve finally the issues submitted to them, judicial review is unavailable." *Id.* Thus, although some "interim awards" may be subject to judicial review, any such award must "finally and conclusively dispose[] of a separate and independent claim," *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986), and "be intended by the arbitrators to be their complete determination" of that claim. *Michaels*, 624 F.2d at 413.

The Ruling that SH Tankers seeks to vacate here is a nonfinal procedural order that this Court has no power to review.[5] *See Michaels*, 624 F.2d at 414; *accord Accenture LLP v. Spreng*, 647 F.3d 72, 77 (2d Cir. 2011) (holding that "interim procedural ruling" did not "finally and definitely dispose of" any claim and was therefore not reviewable "award" under FAA) (internal quotation marks omitted); *Gruntal & Co. v. Maharaj*, 13 F. Supp. 2d 566, 567 (S.D.N.Y. 1998) (holding that court "lack[ed] authority to entertain" petitioner's "interlocutory appeal of a non-final, case-management order" denying adjournment). The Ruling here did not "dispose" of any claim in the arbitration, much less "finally"; even the stay *itself* is not final — "the Panel *will* proceed" with the arbitration once security is posted. (Panel Ruling) (emphasis added). *See Mitsubishi Heavy Indus. v. Stone & Webster, Inc.*, No. 08 Civ. 00509 (JGK), 2009 WL 3169973, at *4–7 (S.D.N.Y. Sept. 29, 2009) (holding that arbitrators' "plainly contingent decision" was "not final and not ready for review").

SH Tankers argues, however, that the Ruling is final as *practical* matter because neither it

---

[5] It is important to note what SH Tankers is *not* seeking to vacate: the Award ordering it to post security in the first place. Neither party disputes that *that* order would, upon a timely petition, be subject to review. But if SH Tankers wanted to challenge the fairness of its having to post security, it had three months from its receipt of the Security Award to do so. *See* 9 U.S.C. § 12. Yet during that three-month window, SH Tankers neither complied with the Award nor sought to vacate it. As a result, SH Tankers is left attempting to vacate an interlocutory ruling — issued months after the Award — in an effort to fend off the consequences of its failure to *comply* with the Award.

nor Garex can post the required security.  (Pet'r's Reply Mem. 3, 12–14).  But so long as the arbitrators did not intend their ruling to be final and are able and willing to revisit their decision, the ruling is not subject to review.  *Michaels*, 624 F.2d at 413–14; *see also McKinney Restoration, Co. v. Ill. Dist. Council No. 1*, 392 F.3d 867, 872 (7th Cir. 2004) ("Where the evidence establishes that the arbitrator does not believe the assignment is completed, the award is not final and appealable.").  The Panel here did not rule that arbitration cannot continue even if SH Tankers and Garex are incapable of posting security.  On the contrary, the stay is premised upon the Panel's conclusion that "[SH Tankers], or more accurately its underwriter," *can* post security but "has *chosen* not to."  (Panel Ruling) (emphasis added).  If SH Tankers maintains that the Panel was incorrect — that neither SH Tankers nor Garex can possibly post security — the proper tribunal to persuade of that is the Panel, not this Court.

As the Second Circuit has noted, the finality of an arbitral ruling "must be assessed in light of" the *functus officio* doctrine.  *Trade & Transp., Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991).  Under that doctrine, "once arbitrators have finally decided the submitted issues . . . their authority over those questions is ended."  *Id.*  But if arbitrators may not revisit rulings that are final (and thus subject to judicial review), then, "[a]pplying logic, the contrapositive is also true: if an arbitrator is not *functus officio* as to an interim award, then the interim award is not subject to judicial review."  *Emp'rs' Surplus Lines Ins. Co. v. Global Reins. Corp.*, No. 07 Civ. 2521 (HB), 2008 WL 337317, at *4 (S.D.N.Y. Feb. 6, 2008).  Here, SH Tankers itself acknowledged the Panel's ability to revisit the Ruling when it asked the Panel to reconsider its decision — which indeed the Panel did.  And as long as the Panel may still revisit the Ruling, it is neither final nor subject to judicial review.

For the same reason, the Ruling is not reviewable under the collateral order doctrine.

"For the collateral order doctrine to apply, the challenged order must . . . *conclusively* determine the disputed question . . . ." *Lora v. O'Heaney*, 602 F.3d 106, 111 (2d Cir. 2010) (emphasis added).  If, however, a tribunal expects to "revisit and reassess" its ruling, the ruling is not "conclusive" and the collateral order doctrine does not apply.  *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 278 (1988).  Here, the Panel has already demonstrated its willingness to "revisit and reassess" the Ruling by "carefully" considering SH Tankers' request for reconsideration.  (*See* Textor Decl. Ex. AAA).  The collateral order doctrine is therefore inapplicable.

SH Tankers nonetheless insists that the Panel intended the Ruling to be final.  It points to a December 19, 2011 email from the Panel, which reads: "The Panel assumes that this matter is apparently at an end and has sent its Partial Final Award dated July 15, 2011 [i.e., the Security Award] to the SMA for Publication."  (Honan Aff. Ex. 8).  That email, SH Tankers argues, leaves "little doubt" that "[t]he October 19th ruling was final."  (Pet'r's Reply Mem. 3, 5).  But the email did not retroactively rewrite the Ruling, which, on its face, still states that the Panel "remains constituted" and will resume the proceedings "as promptly as possible."  And it is that Ruling — not the December email — that SH Tankers seeks to vacate.  If SH Tankers claims that *since* issuing the Ruling the Panel has terminated the arbitration, it should present the Court with an arbitral order doing so in a manner definite enough to allow for judicial review, and try to vacate *that* ruling.  The December email, however, is far too ambiguous — in language, tone, and content — to qualify as a conclusive disposition of the arbitration.

### 2.  *The Petition is Unripe for Review Because the Panel has not Issued an Award*

Even if the Ruling were final, SH Tankers' petition must still be dismissed because it is premature.  SH Tankers asks this Court to vacate the Ruling under Section 10(a)(3) of the FAA,

which authorizes a court to vacate an "award" if arbitrators have "refus[ed] to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). "On its face, this section provides a *post-award* remedy." *Gruntal & Co.*, 13 F. Supp. 2d at 567 (emphasis added). It provides for vacatur if arbitrators have issued an award without first allowing a party to be heard on matters *resolved* in that award. *See Konkar Mar. Enters. v. Compagnie Belge D'Affretement*, 668 F. Supp. 267, 274 (S.D.N.Y. 1987) (denying petition to vacate where party "was not deprived of a fair hearing on the merits of the matters resolved in the Final Award"); *see also British Ins. Co. of Cayman v. Water St. Ins. Co.*, 93 F. Supp. 2d 506, 519 (S.D.N.Y. 2000) (stating that denying hearing would raise fairness concerns only "if a final award were issued without the development of an additional record on the merits"). The Panel, however, has not issued an award since adjourning the proceedings. And absent any "award" against which SH Tankers was denied an opportunity to defend, Section 10(a)(3) is not implicated.[6]

### C.  Cross-Petition to Confirm

KSI cross-petitions this Court under 9 U.S.C. § 207[7] to confirm the Panel's July 15, 2011 Partial Final Award (the Security Award) ordering SH Tankers to post $14.2 million in security for KSI's counterclaims. SH Tankers does not dispute that, unlike a procedural adjournment, an award of prejudgment security *is* a final disposition of a separate issue, and thus reviewable and subject to confirmation. *See, e.g.*, *Banco de Seguros del Estado v. Mut. Marine Offices, Inc.*, 230

---

[6] In its reply brief, SH Tankers also asserts — for the first time — that the arbitrators "exceeded their powers." (Reply Mem. 7); *cf.* 9 U.S.C. § 10(a)(4). Because SH Tankers raised this argument for the first time in its reply, this Court need not consider it. *See, e.g.*, *Playboy Enters. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997). And in any event, the argument is meritless. SH Tankers cannot seriously contend that the Panel lacks the *power* to adjourn proceedings — the Panel has done so numerous times at SH Tankers' own behest. *See also* SMA Mar. Arb. R. § 18 ("The panel may grant adjournments upon a showing of good cause."). Rather, SH Tankers claims that the Panel seriously erred in granting the adjournment here. But that is not a basis for vacatur under Section 10(a)(4). *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1742 (2012).

[7] Section 9 of the FAA allows confirmation of awards only if the parties expressly provide for it in their agreement. 9 U.S.C. § 9. Section 207, implementing the Convention, has no such requirement. *See id.* § 207. Because both sections apply here yet conflict, Section 207 controls. *Id.* § 208; *Phoenix Aktiengesellschaft*, 391 F.3d at 435-36.

F. Supp. 2d 362, 369–70 (S.D.N.Y. 2002) (collecting cases), *aff'd*, 344 F.3d 255 (2d Cir. 2003).

"Under the Convention, the district court's role in reviewing [an] . . . arbitral award is strictly limited" — "the court *shall* confirm the award unless it finds" that one of the enumerated "grounds for refusal" applies. *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (quoting 9 U.S.C. § 207) (emphasis added). The Convention sets forth seven grounds upon which a court may refuse to recognize or enforce an award. *See* Convention art. V. The first five do not apply here because SH Tankers did not affirmatively assert them. *See id.* art. V(1). The final two, which may be raised by a court *sua sponte*, *see* Convention art. V(2), do not apply here either: the parties' dispute is arbitrable under United States law, *cf. id.* art. V(2)(a), and requiring prejudgment security is not "contrary to the public policy" of this country, *cf. id.* art. V(2)(b). Because SH Tankers has declined to oppose KSI's petition and this Court finds no other grounds for refusing confirmation, this Court must confirm the Security Award. 9 U.S.C. § 207

## VI.   CONCLUSION

For the foregoing reasons, SH Tankers' petition to compel arbitration is DENIED, and its petition to vacate the Panel's interlocutory ruling is DISMISSED without prejudice. KSI's cross-petition to confirm the Panel's July 15, 2011 Partial Final Award is GRANTED.

SO ORDERED:

Dated: June 19, 2012
New York, New York

ALISON J. NATHAN
United States District Judge